IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| E.J.D.M., a minor, by and through his mother and next friend, Angela L. Jackson, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO. 1:11cv91-MHT-WC ) ) |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) |
| Defendant. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.    INTRODUCTION

On May 13, 2008, Angela L. Jackson ("Plaintiff") filed an application on behalf of E.J.D.M. ("Claimant"), her minor son, for Supplemental Security Income benefits under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 1381-1383c, alleging Claimant became disabled on September 27, 2000 (Tr. 10, 91).[1]  Plaintiff's application was denied at the initial administrative level.   Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").   Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review.   The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("the

---

[1] Plaintiff appears to have filed two previous applications for SSI benefits on November 13, 2006 and December 27, 2006.  Both prior applications indicated an alleged onset date of June 17, 2006.  It also appears that Plaintiff received a previous hearing after which a decision was rendered by Administrative Law Judge Glay Maggard on June 16, 2006.  Tr. 10.

Commissioner").[2]   *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).   For the

reasons that follow, the undersigned Magistrate Judge RECOMMENDS that the decision of

the ALJ be AFFIRMED.

## II.     STANDARD FOR CHILDHOOD DISABILITY

Under 42 U.S.C. § 1382c(a)(3)(C)(I), a person under the age of 18 is disabled (and

hence entitled to disability benefits) if the person "has a medically determinable physical or

mental impairment, which results in marked and severe functional limitations, and which can

be expected to result in death or which has lasted or can be expected to last for a continuous

period of not less than 12 months."[3]  In determining whether a child is disabled, the

Commissioner employs the following three-step sequential evaluation process.  *See* 20 C.F.R.

§ 416.924 (2007).

(1) Is the person presently not engaged in substantial gainful activity?

(2) Is the person's impairment severe?

(3)  Does the person's impairment meet or equal one of the specific
impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listing of

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

Impairments"), and also meet the twelve-month duration requirement?[4]

If the answer to each of the three questions is "yes," then the child is entitled to benefits.

In order for a severe impairment to meet or equal one of the listed impairments, the impairment must "cause[] marked and severe functional limitations" for the child claimant. 20 C.F.R. § 416.911(b).

> A child's impairment is recognized as causing "marked and severe functional limitations" if those limitations meet[], medically equal[], or functionally equal[] the [L]istings. A child's limitations "meet" the limitations in the Listings if the child actually suffers from the limitations specified in the Listings for that child's severe impairment. A child's limitations "medically equal" the limitations in the Listings if the child's limitations are at least of equal medical significance to those of a listed impairment.

*Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004) (internal quotations and citations omitted). Even if the child's impairment does not meet or medically equal a listing, it may still functionally equal a listing. In assessing functional equivalence, the ALJ considers the "degree to which the child's limitations interfere with the child's normal life activities. The C.F.R. specifies six major domains of life:

(I) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

---

[4] Part A of the Listing of Impairments applies to children and adults; Part B applies to children only. In dealing with a child's case, the Commissioner looks first to Part B, then to Part A. 20 C.F.R. § 416.925(b); *Wilkinson v. Bowen*, 847 F.2d 660, 661 (11th Cir. 1987).

(iv) Moving about and manipulating objects;

(v) Caring for [one]self; and

(vi) Health and physical well-being."

*Id.* at 1279.  "The C.F.R. contains various 'benchmarks' that children should have achieved by certain ages in each of these life domains." *Id.* (citing 20 C.F.R. §§ 416.926a(g)-(l)).  "A child's impairment is 'of listing-level severity,' and so 'functionally equals the listings,' if as a result of the limitations stemming from that impairment the child has 'marked' limitations in two of the domains [above], or an 'extreme' limitation in one domain." Id. (citing 20 C.F.R. § 416.926a(d) and § 416.925(a)).  A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(I).  An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(I).

III.   SCOPE OF REVIEW

The standard of review of the Commissioner's decision is a limited one.  This Court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence

as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead, must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The Court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## IV.    ADMINISTRATIVE PROCEEDINGS

Claimant was nine years old at the time of the hearing before the ALJ.  Tr. 26. Following the administrative hearing, the ALJ found that Claimant "ha[d] not engaged in substantial gainful activity since May 13, 2008, the application date" (Step 1).  Tr. 13.  The ALJ also found that Claimant had the following severe impairments under Step 2:  Attention Deficit Hyperactivity, hyperactive subtype and Borderline Intellectual Functioning.[5]  *Id*. Nonetheless, the ALJ concluded that "Claimant's impairments cause no more than minimal functional limitations; therefore, the claimant does not have an impairment or combination

---

[5] Plaintiff does not challenge the ALJ's determination at Step 2 that Claimant has Attention Deficit Hyperactivity, hyperactive subtype and Borderline Intellectual Functioning.

5

of impairments that is severe." *Id.* Consequently, the ALJ found Claimant was not disabled. Tr. 18.

## V.      PLAINTIFF'S CLAIMS

Plaintiff presents three issues for review: (1) "Whether improper legal standards were used"; (2) "Whether the Commissioner erred as a matter of law in evaluating the severity of [Claimant's] impairments"; and (3) "Whether the ALJ erred as a matter of law in failing to seek further medical review." Pl.'s Brief (Doc. #10) at 5-8.

## VI.     ANALYSIS

### A.      Whether improper legal standards were used.

Plaintiff claims "[t]he ALJ failed to consider treating source opinion or provide reasons for not considering such opinion." Pl.'s Brief (Doc. #10) at 5. Specifically, Plaintiff asserts that an ALJ may not "give the treating physician's medical opinion less than controlling weight simply because another physician has reached a contrary conclusion" and that therefore, the ALJ "cannot disregard Claimant's treating sources[,] e.g. Dr. Robert J. Nolan, . . . who opin[ ]ed that Claimant is impulsive and over active (Tr. 201) and substitute his own judgment." *Id.* at 6-7. The Commissioner responds that "Dr. Nolan rendered his opinions three years before the date of Plaintiff's application for SSI benefits" and, thus, the

6

opinion "did not pertain to the time period relevant in this matter."  Def.'s Brief (Doc. #12) at 8.  Defendant further argues, "[i]n any event, Dr. Nolan's opinions were neither 'bolstered by the evidence' and the 'evidence supported a contrary finding.'" *Id.*

This Court finds that the ALJ did not actually discount the treating physician's opinion in this case.  Plaintiff's argument seems to be premised on the fact that the ALJ's opinion indicates he "assign[ed] significant weight to the opinion of Dr. Jordan," who performed a consultative psychological evaluation.  Tr.17.  Plaintiff seems to conclude that because the ALJ does not explicitly state he is giving controlling weight to the opinion of the treating physician, then he discounted Dr. Nolan's opinion.  The Court disagrees with Plaintiff's reasoning.  Dr. Nolan noted Claimant's "hyperactive tendencies and high distractibility," Tr. 201, and diagnosed "ADHD, Combined or Hyperactive/Impulsive Type."  Tr. 206.  While the ALJ relied on the medical opinions of Dr. Jordan and Dr. Bertucci, both Dr. Jordan and Dr. Bertucci noted Dr. Nolan's ADHD diagnosis, Tr. 305, 310, and diagnosed Claimant with ADHD.  Tr. 16, 306, 308.  This evidence clearly suggests that neither the consultative examiners nor the ALJ discounted Dr. Nolan's ADHD diagnosis.  Moreover, the ALJ's finding that Claimant has the medically determinable impairment of "Attention Deficit Hyperactivity, hyperactive subtype," Tr. 13, is clearly consistent with Dr. Nolan's opinion that Claimant is "over active" and "impulsive."  Thus, the ALJ did not actually discount Dr. Nolan's opinion because his findings are consistent with the physician's diagnosis.

The Court also notes that the ALJ discussed Dr. Nolan's April 2005 ADHD diagnosis

7

in his opinion, indicating reasons why he determined it was appropriate to give controlling weight to the other physicians' opinion.  Discussing Dr. Bertucci's medical opinion, the ALJ writes

> Dr. Bertucci noted that claimant . . . was originally diagnosed by a mental health provider with Attention Deficit Hyperactivity Disorder Combined Type vs. Hyperactive and Impulsive Type on April 20, 2005, which is prior to the filing of the claim for Supplemental Security Income.  Dr. Bertucci noted that the last time Southeastern Pediatric Associates diagnosed the claimant with [ADHD] was April 27, 2007, at which time, the child claimant's teacher reported that the child claimant was staying on task, was not a conduct problem, and was remaining focused.  Dr. Bertucci noted that the last [ADHD] medication, Methylphenidate, was filled December 31, 2007.  Moreover, school records indicate that the child claimant is not in special education. . . . Dr. Jordan diagnosed [ADHD] Hyperactive Subtype with guarded prognosis.

Tr. 16, 311.  The ALJ clearly noted Claimant's history of ADHD diagnoses and objective evidence demonstrating the improvement of Claimant's condition, including Claimant's school record and his discontinued ADHD treatment, which are all indications that his ADHD is not a disabling condition.  The Court also notes that neither Dr. Nolan nor any other physician on the record indicated that Claimant's ADHD was a disabling condition.

It is clear from the record, and the ALJ's opinion, that the ALJ did not discount Dr. Nolan's opinion; at no point did the ALJ disagree as to the existence Plaintiff's ADHD. Moreover, even if the ALJ erred in not assigning substantial weight to Dr. Nolan's opinion, it was a harmless error because the ALJ's finding that Claimant suffers from ADHD is consistent with Dr. Nolan's ADHD diagnosis.  Accordingly, the Court finds Plaintiff's

argument to be without merit.

### B.   Whether the Commissioner erred as a matter of law in evaluating the severity of Claimant's impairments.

In this section, Plaintiff claims the ALJ erred because he "did not analyze each of [Claimant's] impairments" and "gives very little weight to the [Claimant's] mother's testimony." Pl.'s Brief (Doc. #10) at 7. Plaintiff notes that she and Claimant's grandmother provided testimony indicating Claimant has a "short attention span," "was easily distracted," and "has a hard time focusing on things." *Id.* at 8; Tr. 134. Plaintiff then concludes that "[t]he testimony and medical evidence of record clearly establish [Claimant] has physical, learning and attention issues that are more than 'marked.' They impact his everyday life" and that, therefore, "[u]sing the Whole Child Approach at SSR 09-1[,] Title XVI[,] this child is disabled and meets the listing under the functional equivalence rule within the Administration[']s definition of the term 20 C.F.R. 416.906." Pl.'s Brief (Doc. #10) at 8. Plaintiff then adds, "[i]f the ALJ discredits subjective testimony such as the Plaintiff's Mom [sic], teachers and treating medical team[,] he must provide explicit and adequate reasons." *Id.*

As with Plaintiff's first argument, the ALJ's findings in this case are not necessarily inconsistent with Plaintiff's testimony. Testimony regarding Claimant's "short attention span," and lack of focus are all consistent with the ALJ's finding that Claimant suffers from ADHD. The ALJ simply found Claimant's ADHD is not severe enough for a finding of

disability.  The ALJ reached this finding of non-disability based on substantial objective evidence from physicians and Claimant's teachers that demonstrated Claimant's life is not affected to the extent his mother indicates.

Further, this Court finds the ALJ *did* "indicate or explain why he chose to disregard the subjective testimony."  Pl.'s Brief (Doc. #10) at 8.  The ALJ had before him Dr. Bertucci's medical opinion indicating, "[t]he applicant's statements about the child's symptoms and functional limitations are partially credible as the severity alleged is not totally consistent with the objective findings from the MER [medical evidence of record] in file." Tr. 15, 312.  The ALJ also took note of evidence that "claimant's conduct is normal at school; the teacher does not support the [ADHD] diagnosis; and with regards to claimant's asthma, no attacks have been noted."  Tr. 15.

Moreover, as Defendant points out "Plaintiff seems to argue [Claimant's] impairments either met or functionally equaled a Listing," however, "Plaintiff does not state what listing [Claimant's] impairments purport to meet."  Def.'s Brief (Doc. #12) at 10.

Other than listing her own subjective testimony and that of Claimant's grandmother, and concluding that Claimant's alleged limitations "impact his everyday life," Plaintiff fails to point this Court to any medical evidence of a *marked* limitation.  This is not to say that Claimant does not suffer physical and/or mental limitations.  However, the evidence of record in this case supports the ALJ's determination that "[C]laimant's impairments cause no more than minimal functional limitations; therefore, the claimant does not have an

10

impairment or combination of impairments that is severe." Tr. 13.  Accordingly, the Court finds this argument to be without merit.

### C.    Whether the ALJ erred as a matter of law in failing to seek further medical review.

In this section, Plaintiff asserts that the ALJ "erred in failing to seek a Consultative Exam which would include a Psychological Evaluation with current IQ testing and also in failing to have a Medical Examiner provide expert opinion testimony at the hearing in this case."  Pl.'s Brief (Doc. #10) at 9.  Plaintiff argues that "[b]y the time the decision was released[,] the extensive testing performed by Dr. Nolan was well over two years old (Tr. 202). This testing indicated Plaintiff was one year and three months behind his chronological age.  Utilizing testing which is out of date is contrary to Social Security's own rules.  Further, because this was the only IQ type evidence in the file, it denied Plaintiff a full and fair trial." Pl.'s Brief (Doc. #10) at 9.  Defendant responds that "Dr. Nolan did not administer any IQ testing whatsoever," that "the ALJ did order a consultative examination, i.e., the examination performed by Dr. Jordan in August 2008," and that the ALJ was not required to order further consultative examinations or obtain medical expert testimony because the ALJ had before him sufficient medical evidence to assess Claimant's disability status and "medical expert testimony was not necessary to evaluate and interpret background medical test data."  Def.'s Brief (Doc. #12) at 14.  For the reasons that follow, the Court agrees with Defendant.

As to Plaintiff's first argument that the ALJ failed "to seek a Consultative Exam

which would include a Psychological Evaluation," the Court notes that, as the Commissioner points out (Def.'s Brief (Doc. #12) at 14) the ALJ *did* order a consultative examination in this case.  Tr. 305-07.  As the ALJ's decision clearly states, "Dr. Jordan, Psy.D., performed a consultative psychological evaluation of claimant at the request of the Social Security Administration."  Tr. 15.

To the extent Plaintiff argues the ALJ should have ordered a *second* consultative examination, a consultative examination will be ordered at the discretion of the ALJ and only when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision on the claim. 20 C.F.R. § 404.1519a.  *See also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision." citing *Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001)); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988) (the ALJ is not required to order a consultative examination, and has discretion to order such an exam only when necessary); *Sellers v. Barnhart*, 246 F. Supp. 2d 1201, 1210 (M.D. Ala. 2002) (same).  In this case, the ALJ had sufficient evidence before him to accurately assess the claimant's disability status. The ALJ had before him numerous sources of evidence, including "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements (including

12

statements from the claimant's parents [and] other caregivers); and [ ] other relevant evidence." Tr. 13.  The ALJ also considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," Tr. 13, and found that "claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, the allegations concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with finding that claimant has no severe impairment of combination of impairments." Tr. 15.  The objective evidence on the record indicated that Claimant's "speech was understandable at 100%," Tr. 15, 305; he has been in regular classes, is not a discipline problem, and has improved academically,[6] Tr. 139-46, 189-96; and he has

---

[6] A review of the two Teacher Questionnaires on the record indicates Claimant's academic improvement.  In 2007, Claimant's Kindergarten teacher indicated Claimant had some problems in areas, such as "focusing long enough to finish assigned activity or task" and "working without distracting self or others" as well as "a serious problem" in areas such as "carrying out multi-step instructions" and "carrying out single-step instructions" but specified, this applied "only [to] written assignments." Tr. 141.  She also indicated "[she] noticed an increase in his performance level" after Claimant's mother gave permission for him to take Ritalin at school.  Tr. 146.  She indicated that his report card grades at that time consisted of 27 "Satisfactory" marks, 2 "Improvement" marks, 4 "Needs Improvement" marks, and 1 "Unsatisfactory" mark.  Tr. 146.

Claimant's third grade teacher, in a questionnaire dated February 16, 2010, indicated that Claimant has "no problems" attending and completing tasks "when medicated." Tr. 191.  She also noted no problems in "interacting and relating with others," "moving about and manipulating objects," or "caring for himself." Tr. 191-94.  She indicated Claimant has "a slight problem" "understanding school and content vocabulary," "reading and comprehending written material," and "comprehending and doing math problems." Tr. 190.  Claimant's Grade Report for the 2009-2010 Academic Year indicates that Claimant's grades ranged from an 82 in Math to a 96 in both Social Studies and Science/Health as well as a 100 in Physical Education.  Tr. 200.

not taken his ADHD medication since 2007.[7] Thus, further development of the record, including ordering a second consultative examination and IQ testing was not necessary.[8]

Plaintiff's second argument, that the ALJ "failed to have a Medical Examiner provide expert opinion testimony at the hearing in this case," Pl.'s Brief (Doc. #10) at 9, must also fail. The ALJ is not required to obtain medical expert testimony when there is sufficient evidence on the record. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (rejecting Plaintiff's argument that "the ALJ was obligated to seek independent, additional expert medical testimony before concluding that [claimant's] impairment was not severe" because "the record, which included the opinions of several physicians . . . was sufficient for a decision and additional expert testimony was unnecessary"). As discussed above, the ALJ had sufficient evidence before him to reach a determination on Claimant's disability status.[9]

Taking into consideration all the evidence on the record, both medical and non-

---

[7] Claimant's third grade teacher notes, however, that he is "more focused, calm after ADHD medication," and answered in the affirmative when asked whether Claimant takes his medication on a regular basis. Tr. 195.

[8] The Court notes that Plaintiff does not allege that Claimant's IQ appreciably changed in the period between Dr. Nolan's evaluation and the hearing.
Plaintiff's brief appears to put forth conflicting arguments, arguing both that 1) the ALJ erred in allegedly discounting Dr. Nolan's opinion, according to Plaintiff, a medical opinion to which the ALJ is obliged to give substantial weight, *see supra* Section A, and 2) that the ALJ erred *because* he relied on Dr. Nolan's evaluation, which included outdated IQ scores. The Court finds that both arguments are without merit.

[9] To the extent Plaintiff argues that a Medical Examiner would have been able to testify that Claimant meets a disability listing, as with Plaintiff's second argument, she fails to identify which listing Claimant would purportedly meet.

medical, it is clear that there was sufficient evidence on the record for the ALJ's determination that claimant's ADHD is not a disabling condition. Accordingly, Plaintiff's claim that the ALJ erred in failing to order a consultative examination and seek a medical expert's testimony is without merit.

## VII.   CONCLUSION

Accordingly, for the reasons stated above, the undersigned Magistrate Judge RECOMMENDS that the decision of the Commissioner be AFFIRMED. It is further

ORDERED that the parties shall file any objections to the said Recommendation **on or before January 3, 2012.**  Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party objects. Frivolous, conclusive, or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir.1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc) (adopting as binding precedent all of the

decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

Done this 19th day of December, 2011.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.

UNITED STATES MAGISTRATE JUDGE